UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 11-50128-JLV |
| | ) | |
| Plaintiff, | ) | ORDER ON DEFENDANT'S |
| | ) | MOTION TO SUPPRESS, REPORT |
| vs. | ) | AND RECOMMENDATION, AND |
| | ) | DEFENDANT'S OBJECTIONS |
| JAMES LADEAUX, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION AND PROCEDURAL HISTORY**

On September 5, 2011, law enforcement entered the residence of defendant James LaDeaux without a warrant. Due to events which occurred after the entry, the government subsequently indicted Mr. LaDeaux on one count of assault on a federal officer with a dangerous weapon, in violation of 18 U.S.C. § 111. (Docket 1). Mr. LaDeaux timely filed a motion to suppress all evidence obtained as a result of law enforcement's warrantless entry into his residence. (Docket 19). Mr. LaDeaux alleges the entry violated his rights under the Fourth Amendment to the United States Constitution.[1] Id. The government resisted the motion. (Docket 25). Pursuant to the court's standing order and 28 U.S.C. § 636(b)(1)(B), the court referred the matter to Magistrate Judge Veronica L. Duffy for resolution.

---

[1] "Although the fourth amendment does not apply to the conduct of Indian tribal officials in Indian territory, the same standards are applicable to their actions under the Indian Civil Rights Act of 1968." United States v. Schmidt, 403 F.3d 1009, 1013 (8th Cir. 2005).

On March 14, 2012, Judge Duffy held an evidentiary hearing on the motion. (Docket 26). Judge Duffy received into evidence four exhibits and the testimony of Special Agent Justin Michael Cooper of the Bureau of Indian Affairs ("BIA") and Officer Clayton Ten Fingers of the Pine Ridge Police Department. Following the evidentiary hearing, both parties filed supplemental briefing. (Dockets 28 & 29). On March 16, 2012, Judge Duffy issued a report recommending the court deny Mr. LaDaux's motion to suppress. (Docket 30). Judge Duffy found exigent circumstances justified law enforcement's warrantless entry into Mr. LaDeaux's residence (hereinafter "the residence") and, thus, no Fourth Amendment violation occurred. (Docket 30). Mr. LaDeaux timely filed objections to the report and recommendation. (Docket 33). The government did not file a response to Mr. LaDeaux's objections. On May 3, 2012, Mr. LaDeaux filed a second supplemental brief. (Docket 54). On May 7, 2012, Mr. LaDeaux and the government filed additional briefs. (Dockets 55 & 56). For the reasons set forth below, the court denies Mr. LaDeaux's motion to suppress.

## DISCUSSION

Because Mr. LaDeaux timely filed objections to the report and recommendation, the court reviews the record *de novo*. 28 U.S.C. § 636(b)(1). The court thoroughly reviewed the entire record in this case, including the parties' numerous submissions (Dockets 19, 20, 25, 28, 29, 33, 54, 55, & 56),

the transcript of the evidentiary hearing (Docket 31), the exhibits received into evidence at the evidentiary hearing, and the report and recommendation (Docket 30).

Mr. LaDeaux asserted numerous objections to the findings of fact and conclusion of law set out in the report and recommendation. Mr. LaDeaux specifically objected to any factual finding (1) Officer Ten Fingers was responding to a domestic violence call when he entered the residence; (2) Amy Belt[2] was a "victim"; (3) Mr. LaDeaux was a "suspect"; and (4) Officer Ten Fingers "was justified in reacting quickly to this situation and attempting to prevent LaDeaux from retrieving a firearm or other weapon." (Docket 33 at p. 2). Mr. LaDeaux also objected to the court's use, in resolving the suppression motion, of any information obtained after Officer Ten Fingers entered the residence. Id. at p. 3.

Mr. LaDeaux objected to the legal finding "that any evidence supported Ten Fingers' speculation that the person who slammed the residence door may retrieve a weapon." Id. at p. 4. Additionally, Mr. LaDeaux objected generally to any legal finding that exigent circumstances existed to justify Officer Ten Fingers' warrantless entry into the residence.

The court views the evidence objectively, "focusing on what a reasonable, experienced police officer would believe." United States v. Ramirez, __ F.3d __,

---

[2]Amy Belt is Mr. LaDeaux's wife.

2012 WL 1432062 at *3 (8th Cir. April 26, 2012) (citation and internal quotation marks omitted). To resolve Mr. LaDeaux's objections, the court must answer two issues: (1) whether a reasonable, experienced officer would have believed a domestic violence incident occurred; and (2) whether a reasonable, experienced officer would have believed exigent circumstances were present. The court shall address each issue in turn.

### A. Whether a Reasonable, Experienced Officer Would Have Believed a Domestic Violence Incident Occurred

The court adduces the following facts from the testimony and exhibits received into evidence at the suppression hearing. The court considers only those facts known to Officer Ten Fingers before his entry into the residence. The court will not consider the events which transpired after Officer Ten Fingers entered the residence as that information is irrelevant.

Officer Ten Fingers' entry into the residence occurred on September 5, 2011. Some months earlier, Officer Ten Fingers took a police report from Ms. Belt. At that time, Ms. Belt expressed fear of Mr. LaDeaux and her desire to "sign charges" and to request a security check. After this encounter, Ms. Belt did not pursue the matter further.

On September 5, 2011, at approximately 2:22 a.m., dispatch for the Oglala Sioux Tribe Department of Public Safety called the Pine Ridge Police Department and spoke to Officer Ten Fingers. Dispatch told Officer Ten

Fingers she received a "DV" call[3] regarding an incident involving two intoxicated individuals at Mr. LeDeaux's pink and white trailer.[4] Dispatch informed Officer Ten Fingers a female told a male to leave her alone and the male was yelling at her and accusing her of cheating on him. Officer Ten Fingers immediately went to Mr. LaDeaux's residence, knocked several times, identified himself as a police officer, and asked if anyone needed help, but did not receive any response or hear any disturbance.

At approximately 3:06 a.m., dispatch received an open line call, that is, the caller did not speak directly to dispatch, but dispatch reported she could hear a female crying and screaming "leave me alone. I aint [sic] fucking fighting you . . . stay away from me." Dispatch could hear a male saying "give me that phone." (Exhibit 3). It is unclear whether one open line call was made or several calls were made in brief succession.

---

[3]The court finds it reasonable to assume a "DV" call refers to a domestic violence call.

[4]The call came from a neighbor of Mr. LaDeaux voicing a noise complaint. The neighbor told dispatch Mr. LaDeaux was chasing his girlfriend down the street, accusing her of cheating on him and yelling at her. The girlfriend was yelling at Mr. LaDeaux to leave her alone. Dispatch included a description of the call in the CAD system, or computer-aided dispatch system. The description read "James La beaux he is chasing his girlfriend she is saying leave me alone but he is yelling at her saying she cheated on him . . . are they drunk . . . they have to be [. . .] the old trailer court below the old hospital . . . on the corner across from Myron Shaw they live in a pink and white trailer." (Exhibit 2). The court does not know if Officer Ten Fingers read this description.

At 3:09 a.m., dispatch called Officer Ten Fingers and asked him to patrol around the lower IHS trailer court. Dispatch explained she received a 911 call exhibiting a disturbance between a male and a crying female. Officer Ten Fingers asked which trailer the call originated from. Dispatch gave him the general location matching up to the coordinates from the call. Officer Ten Fingers accessed the narrative of the call on the CAD system.

Officer Ten Fingers knew the call originated somewhere north of the police department, which included the lower IHS trailer court and a creek. Mr. LaDeaux's residence was in the general area. Because of his previous visit, Officer Ten Fingers went back to Mr. LaDeaux's residence, not knowing if this was the right trailer. Officer Ten Fingers parked his patrol unit in front of the residence and called dispatch to determine if the coordinates of his location matched the coordinates of the call.

Before dispatch called back to confirm the coordinates, Officer Ten Fingers observed Ms. Belt running out of the residence. Ms. Belt was crying and appeared to be scared. Officer Ten Fingers saw the door to the residence close. Officer Ten Fingers ran to the door and tried to open it, but it was locked. He then kicked the door twice to open it and entered the residence with his flashlight and service revolver drawn.

When viewing the evidence objectively, the court finds a reasonable, experienced police officer with knowledge of the above facts would have

believed a domestic violence incident occurred prior to his entry into the residence. The court further finds a reasonable, experienced police officer with knowledge of the above facts would have believed Ms. Belt was the victim of the domestic violence incident and Mr. LaDeaux was the aggressor. To the extent Mr. LaDeaux objects to the facts underlying these findings, the court overrules his objections. To the extent the report and recommendation sets out facts supporting these findings, the court adopts the report and recommendation in part.

**B.  Whether a Reasonable, Experienced Officer Would Have Believed Exigent Circumstances Were Present**

The fact a domestic violence incident occurred at Mr. LaDeaux's residence does not end the inquiry, however. Not all domestic violence situations create exigent circumstances. See United States v. Davis, 290 F.3d 1239, 1244 (10th Cir. 2002) (rejecting blanket rule domestic violence calls are always dangerous so as to give police officers "unfettered permission" to enter homes). The government argued concerns regarding officer safety and the safety of other potential victims justified Officer Ten Fingers's entry into the residence.[5] (Docket 29 at p. 6). When viewing the facts objectively, the court

---

[5] "The [exigent circumstances] exception justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." Ramirez, 2012 WL 1432062 at *3. The exception is "narrowly drawn" and "applies even when . . . probable cause for the [search or arrest] clearly exists." United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996); United States v. Duchi, 906 F.2d 1278, 1282 (8th Cir.

finds those concerns were not reasonable given the unique set of facts in this case. In reaching this decision, the court properly places the burden on the

---

1990); see also Schmidt, 403 F.3d at 1013 ("An exception to the warrant requirement permits an officer to enter a home if he or she acts with probable cause in the presence of exigent circumstances."). Thus, although a police officer may have probable cause a crime has been committed, this conclusion does not justify a warrantless entry into a residence absent, at issue here, exigent circumstances.

 The government did not argue Officer Ten Fingers had to enter the residence without a warrant in order to prevent the destruction of evidence or to prevent Mr. LaDeaux from escaping. Additionally, the court finds neither concern compelling. There did not appear to be any evidence in danger of destruction, and a police officer could have been assigned to watch the residence until a judicial officer signed a warrant. Although the incident occurred in the early morning hours of September 5, 2011, there are tribal judges living on the Pine Ridge Indian Reservation who could have been contacted to sign an arrest warrant.

 In more rare circumstances, exigent circumstances "may also be found when there is a compelling need for official action and there is no time to secure a warrant." Radloff v. City of Oelwein, Iowa, 380 F.3d 344, 348 (8th Cir. 2004). In Radloff, in response to a complaint regarding underage drinking, police arrived at a residence and observed a party and juveniles consuming alcohol inside the residence. Id. at 346. The United States Court of Appeals for the Eighth Circuit held it was reasonable for officers to enter the residence to stop the loud noise created by the party and to prevent the juveniles from driving while intoxicated. Id. at 348. The Eighth Circuit also found it would be unreasonable "to subject the neighbors to the loud noise or to require the officers to quarantine the juveniles' cars during the period of time it would have taken to obtain a warrant." Id. The court does not believe this exception applies here. The domestic violence incident already occurred by the time Officer Ten Fingers entered the residence. There was no ongoing violation like that in Radloff.

 Finally, exigent circumstances may justifying a warrantless entry into a residence to arrest an occupant. See United States v. Kulcsar, 586 F.2d 1283, 1287 (8th Cir. 1978) (setting out factors to be considered). The government does not argues this exception to the warrant requirement applied. In any event, two of the factors in this analysis are the suspect is reasonably believed to be armed and the suspect will escape absent swift apprehension. See id. The court finds neither factor is present here.

government to demonstrate the existence of exigent circumstances. See Ramirez, 2012 WL 1432062 at *3 ("[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.") (citation and internal quotation marks omitted). The government failed to meet its burden in this case.

The court recognizes domestic violence situations are of particular concern to law enforcement because of the "combustible nature" of the disputes. See United States v. Lawrence, 236 F. Supp. 2d 953, 962-63 (D. Neb. 2002) (describing law enforcement's unique concerns regarding domestic disputes). However, there is no *per se* domestic violence exception to the warrant requirement of the Fourth Amendment. The fact domestic violence occurred does not, in and of itself, create exigent circumstances. There must be something more, and here, there is not.

The law governing exigent circumstances is set out correctly in the report and recommendation, and the court need not repeat that recitation here. Where the court diverges from the report and recommendation is the legal conclusion reached after applying the facts of this case to the law.

A police officer may enter a residence without a warrant in order to "protect an occupant from imminent injury." United States v. Uscanga-Ramirez, 475 F.3d 1024, 1028 (8th Cir. 2007). Courts "have accorded great latitude to an officer's belief that warrantless entry was justified by exigent

9

circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger." Lawrence, 236 F. Supp. 2d at 962 (collecting cases). The court finds a reasonable, experienced officer with knowledge of the facts of this case would not have a legitimate concern for the safety of other potential victims, that is, victims other than Ms. Belt, or for the safety of Mr. LaDeaux. The court first addresses the issue of other potential victims. There is no evidence anyone other than Ms. Belt and Mr. LaDeaux lived or was present in the residence on September 5, 2011. When Ms. Belt spoke to Officer Ten Fingers a few months earlier, she did not mention anyone else living in the residence or her fear for the safety of anyone else. When Mr. LaDeaux's neighbor called dispatch on September 5, 2011, she did not identify any other person involved in the dispute, nor express fear for the safety of another person. When the open line call came into dispatch on September 5, 2011, there was only one male voice and one female voice on the call.

When Officer Two Fingers arrived at the residence after learning of the open line call, there was no evidence of any disturbance inside or outside the residence. Indeed, Officer Two Fingers was startled when Ms. Belt ran out of the residence. Importantly, Officer Two Fingers recognized the fleeing woman as Ms. Belt. If he did not recognize her, it might have been reasonable for Officer Ten Fingers to be concerned about Ms. Belt and to enter the residence to ensure her safety. Even if Officer Ten Fingers recognized the fleeing woman

10

as Ms. Belt, but heard signs of a struggle or commotion still occuring in the residence, Officer Ten Fingers may have been justified to enter the residence after reasonably concluding another potential victim was present or Mr. LaDeaux required aid.  Cf. United States v. Martinez, 406 F.3d 1160, 1164-65 (9th Cir. 2005) (noting, although exigent circumstances were not present because the victim of domestic assault was outside the residence, the emergency exception to the warrant requirement applied because police still heard angry yelling from inside the residence and entered the residence to render emergency aid).  However, there was no evidence of any disturbance within the residence.

 Additionally, if Officer Ten Fingers stopped Ms. Belt and she told him there was someone else in the residence, Officer Ten Fingers may have been justified in entering the residence to ensure the safety of that other person.  However, Officer Ten Fingers did not stop Ms. Belt and, thus, did not learn from her of any other potential victim.  Here, Ms. Belt was outside the residence, and there was no evidence, either based on Officer Ten Fingers' prior knowledge or the knowledge he learned on September 5, 2011, that another potential victim was in danger.  Ms. Belt was the only possible victim according to the facts of this case, and she was no longer in harm's way.  See United States v. Lopez, No. 2:08-CR-94, 2009 WL 982777 at *4 (E.D. Tenn. April 13, 2009) (noting courts "have held, almost uniformly, that once a victim of

domestic violence is removed from the situation, the exigency required to justify a warrantless entry is also removed" and collecting inter-circuit cases) (citation and internal quotation marks omitted).

Similarly, the court finds a reasonable, experienced officer with knowledge of the facts of this case would not have a legitimate concern for the safety of Mr. LaDeaux.  There is no evidence he was injured or was a threat to himself.  See Uscanga-Ramirez, 475 F.3d at 1029 (finding exigent circumstances were present when defendant's wife told officers defendant locked himself in the bedroom with a gun and was very upset).

The government also argued Officer Ten Fingers was justified in entering the residence to protect his safety in the event Mr. LaDeaux used a firearm or other weapon.  However, there is no evidence Mr. LaDeaux owned a firearm or, if he owned one, would use a firearm against anyone, much less law enforcement.  See United States v. Church, No. 1:06:CR:292, 2007 WL 689890 at *2, (W.D. Mich. March 2, 2007) (noting "[t]he presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent") (citation and internal quotation marks omitted).  The government presented no evidence Mr. LaDeaux ever used any kind of weapon, whether a firearm, a knife, or his fists, against Ms. Belt, a police officer, or anyone else.  Further, no shots were heard or reported on September 5, 2011,

nor did anyone (a neighbor, a caller to police dispatch, or Ms. Belt herself) inform the police they saw or knew of a firearm in the residence or they saw Mr. LaDeaux brandishing a firearm.  There is no evidence Mr. LaDeaux ever *physically* assaulted anyone, used a weapon against anyone, or threatened to use a weapon against anyone, whether on September 5, 2011, or any other time.  There is no evidence Officer Ten Fingers observed wounds, blood, scratch marks, or any signs of violence on Ms. Belt as she fled the residence.  This is not a situation where Officer Ten Fingers asked Mr. LaDeaux to exit the residence and Mr. LaDeaux threatened to use a weapon to harm himself or Officer Ten Fingers.  Nor is this a situation where Officer Ten Fingers observed through a window Mr. LaDeaux pick up a weapon.  In such situations, warrantless entry into a residence may be justified.

If there was any danger to Officer Ten Fingers, it was the result of his own actions, that is, his entry into the residence without backup and without knowing the situation.  If Officer Ten Fingers secured Ms. Belt as she fled the residence, he could have determined if she needed medical assistance, if she showed signs of a violent encounter, if there was anyone else in the residence, and if Mr. LaDeaux owned a firearm, threatened Ms. Belt with a firearm or other weapon, or threatened to harm himself.  Instead, Officer Ten Fingers burst into the residence based on ungrounded assumptions.  A reasonable, experienced officer in Officer Ten Finger's position, faced with the little

information available, would not have believed his life or the lives of others were in immediate danger.  No serious consequences would have occurred in the short amount of time necessary to secure a warrant.  Based on this record and in light of the burden of proof, the court finds exigent circumstances did not exist, Officer Ten Finger's warrantless entry into the residence was not justified, and Officer Ten Fingers' actions violated Mr. Ladeaux's Fourth Amendment rights.

The court does not discount Officer Ten Fingers' training on how to handle domestic violence situations.  The court believes it was this training, rather than the facts of the case, that motivated Officer Ten Fingers to enter the residence.  The court recognizes and understands the dangers police officers face on a daily basis.  However, the right under the Fourth Amendment to be free from unreasonable searches and seizures is a fundamental one and must be safeguarded from police overreaching and from dilution.

The finding a Fourth Amendment violation occurred is a hollow victory for Mr. LaDeaux.  Generally, the exclusionary rule bars the admission of the fruits of the poisonous tree, that is, evidence directly or indirectly obtained through police illegality.  See Wong Sun v. United States, 371 U.S. 471, 484-86 (1963).  However, numerous exceptions to the exclusionary rule exist.  One such exception applies here.

Mr. LaDeaux's alleged actions inside his residence "could constitute a new and distinct crime." United States v. Schmidt, 403 F.3d 1009, 1016 (8th Cir. 2005). "In our circuit, resistance to an illegal arrest can furnish grounds for a second, legitimate arrest." Id. Mr. LaDeaux's "resistance provided an independent ground for his arrest . . . that thereafter furnished an independent justification for Officer [Ten Fingers'] presence in the house." Id. "[T]he Fourth Amendment does not bar evidence obtained after Mr. [LaDeaux] committed a new crime." Id.; see also United States v. Waupekenay, 973 F.2d 1533 (10th Cir. 1992) (finding officer's illegal entry into defendant's residence did not taint evidence relating to defendant's subsequent assault–once defendant "was aware that the police officers were present in his home and were observing him, he could not have had a reasonable expectation of privacy for any actions initiated *subsequently* to that time in their presence" and, thus, evidence relating to the assault was not fruit of the poisonous tree) (emphasis in original) (collecting inter-circuit cases with similar holdings and noting although courts may base their decisions on different reasoning, the holdings are the same).

Here, consistent with Schmidt, the court finds the evidence relating to an alleged separate, independent offense is not tainted by Officer Ten Fingers' unlawful entry into Mr. LaDeaux's residence. This evidence is not fruit of the

poisonous tree and is not subject to the exclusionary rule of the Fourth Amendment.

## CONCLUSION

In accord with the above discussion, it is hereby

ORDERED that Mr. Ladeaux's motion to suppress (Docket 19) is denied.

IT IS FURTHER ORDERED that the report and recommendation (Docket 30) is adopted in part and denied in part.

IT IS FURTHER ORDERED that Mr. Ladeaux's objections (Docket 33) are overruled in part and sustained in part.

Dated May 8, 2012.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE